



FILED WITH
COURT SECURITY OFFICER
9|24|09
DATE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUL ZAHIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1623 (RWR) |
| | ) | |
| GEORGE W. BUSH et al., | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM ORDER

Petitioner Abdul Zahir, a detainee at Guantánamo Bay, has moved under Section I.E.2 of the Case Management Order ("CMO") for an order allowing him to propound to the respondents 84 numbered interrogatories, many containing multiple sub-parts, and eight requests for production of documents. The respondents oppose Zahir's requests, arguing that they are overbroad, that they exceed the scope of discovery that was contemplated by Section I.E.2 of the CMO, and that Zahir fails to make the necessary showing that granting his requests would produce evidence material to the lawfulness of Zahir's continued detention. Because Zahir does not support several of his requests by showing how the requested discovery will enable him to rebut the factual basis for his detention, his motion for leave to file those requests will be denied. However, because the respondents do not show how answering several of Zahir's





-2-

requests would be unfairly disruptive or burdensome to them, Zahir's motion for leave to propound those requests will be granted.

## BACKGROUND

Zahir has been a detainee at the United States Naval Base in Guantánamo Bay, Cuba ("Guantánamo") since b(1) ▓▓▓▓▓▓ The respondents allege in their amended factual return that for approximately three years before the Taliban fell from power in December 2001, Zahir "worked closely as the translator and trusted assistant of a senior al-Qaida commander in Afghanistan" named Abdul Hadi al-Iraqi ["al-Hadi"], who was purportedly al-Qaida's "commander in northern Kabul," and that Zahir "assisted in the management of al-Qaida guesthouses, procurement of supplies and funding for al-Qaida's fighters, coordination of al-Qaida and Taliban military activities, and the handling of money for al-Qaida-sponsored activities." (See Amended Factual Return, Ex. 1, Declaration of Rear Admiral David Thomas ("Thomas Decl.") at ¶¶ 1, 3.) According to the amended factual return, b(1) ▓▓▓ b(1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that provided al-Qaida affiliates with "safe venues to liase and to rest between frontline deployments," served as "facilitation hubs for training of fighters," and were reserved for "individuals with specific, definable connections to al-Qaida," but were not available to the general public. (Id. at ¶ 18.) b(1) ▓▓▓▓▓





-3-

b(1)

b(1) (Id. at ¶ 19.) The

respondents also allege that after December 2001, Zahir "became

an active member of an anti-coalition cell that planned to use

violence against the armed forces of the United States and its

allies" in order to force them to leave Afghanistan, and that

Zahir supported this cell by "arranging funding from al-Qaida."

(Id. at ¶ 1.) Zahir is further alleged to have been "involved

in" a grenade attack perpetrated against a vehicle carrying

foreigners in Zormat, Afghanistan; to have "associated" with

senior al-Qaida members including Usama bin Laden, Ayman al-

Zawahiri and Mohammed Atef; and to have had "repeated

interactions with Mullah Obaidullah, the Taliban Minister of

Defense, senior Taliban commanders, and other extremist

individuals and organizations." (Id.)

Zahir has asserted that he is not a member of al-Qaida, and

that he "did not know al-Hadi was a member of al-Qaida." (Thomas

Decl. at ¶ 23.) As for the grenade attack in Zormat,

Afghanistan, the amended factual return states that Zahir

acknowledged that he was a passenger in the car driven by the

person who perpetrated the grenade attack. However, Zahir

claimed that he and another passenger attempted to convince the

perpetrator not to go through with the attack. (Id. at ¶¶ 52-

56.)





-4-

Zahir's counsel has sent the respondents a set of 84 interrogatories and eight requests for production of documents. Subsequently, the respondents informed Zahir's counsel by letter that they had "produced the majority of documents responsive to this request" and that "much of the information responsive to [Zahir's] request was produced in attachments to the Government's [amended] factual return." (See Pet'r's Mot. to Propound Interrogatories and for Production of Documents ("Pet'r's Mot.") at 1.) Zahir now moves for an order allowing him to propound this discovery. Respondents oppose.

## DISCUSSION

The relevant portion of the CMO states:

> The Merits Judge may, for good cause, permit the petitioner to obtain limited discovery beyond that described in [Section I.E.1]. . . . Discovery requests shall be presented by written motion to the Merits Judge and (1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful . . . and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government.

(CMO, November 6, 2008, docket entry #53 ("CMO"), § I.E.2.)

Several of the interrogatories and requests for production that Zahir seeks to propound do not appear likely to lead to the discovery of material information that would undermine the legitimacy of his detention. In interrogatory 1, Zahir asks the respondents to provide him with the identities of the person or





-5-

people who answer the interrogatories. In interrogatories 29 to 31, Zahir asks respondents whether they have evidence showing that Zahir dealt with chemical or biological weapons, and if the respondents have such evidence, where they obtained it from. In interrogatory 33, Zahir asks the respondents to identify all information in the amended factual return that the government learned after September 3, 2004. In interrogatories 34 to 37, Zahir asks the respondents whether they possessed any information that Zahir used the name  and if so, when he used that name. In interrogatories 48 to 51, Zahir asks the respondents about details pertaining to a purported rocket attack that occurred in 2002 against a United States installation near Ghazny, Afghanistan.

Zahir does not show that the answers to any of these questions are likely to contain material information that undermines the legitimacy of his detention, nor does Zahir match these requests with any assertions against him in the amended factual return. For example, Zahir notes that he is referred to by the name ▮ in one place in the amended factual return, but he does not explain in any way how that reference pertains to any of the factual assertions made against him, or how the information about Zahir's purported use of that name would in any way undermine the factual basis for his detention. Because Zahir does not make a showing that answering these





questions is likely to produce material evidence demonstrating the unlawfulness of his detention, his request to propound these interrogatories will be denied.

Zahir also seeks to propound several requests that would likely produce legal theories instead of factual evidence that would affect the legitimacy of Zahir's detention. In interrogatories 3 to 6, Zahir requests legal definitions and positions pertaining to the legal basis for Zahir's detention. In interrogatories 40 to 45, Zahir asks the respondents whether they claim that Zahir was or is a member of al-Qaida or the Taliban, and if so, how the respondents define the word "member." In interrogatories 52 and 74 to 83, Zahir seeks further explanation from the respondents about the legal justification for his detention. These topics, about which respondents bear disclosure obligations under Section I.B of the CMO, are not evidence pertinent to the **factual basis** for a petitioner's detention discoverable under I.E.2. Therefore, Zahir's requests to propound these interrogatories will be denied.

Interrogatory 2 is in effect not an interrogatory but a document request that duplicates what the CMO already required the respondents to produce under Section I.E.1 with which the respondents state they have complied. Even if it could properly be viewed as an interrogatory, it lacks the specificity required





under Section I.E.2 (1) and (2) of the CMO.  Therefore, this request will be denied.

Interrogatories 7 to 13 pertain to the respondents' allegation that Zahir provided services at guesthouses or training camp facilitation hubs affiliated with al-Qaida. Interrogatories 14 to 28 request that the respondents specify their position about whether Zahir engaged in armed combat or other types of battle against the United States and coalition forces, and if so, when and where he did so.  The respondents oppose answering these interrogatories because they claim that Zahir has not shown that the answers would yield evidence material to Zahir's case.  While there is some merit to the respondents' argument, it is conceivable that Zahir could use the information that the responses to these interrogatories would provide in his favor, and the respondents provide absolutely no evidence of how answering these interrogatories would unfairly disrupt or burden the respondents.  However, Zahir has not matched these requests with a specific assertion found in the amended factual return that the answers would be likely to undermine, and thus they stray from the type of discovery anticipated under the CMO.  Zahir's request for leave to issue interrogatories 7 to 28 will be denied without prejudice.  If Zahir can, with specificity, point to an assertion in the amended factual return that the answers to these questions might call





-8-

into question, he may re-file his motion for leave to propound these interrogatories.

In interrogatory 32 and request for production 1, Zahir asks whether the respondents obtained information about Zahir from al-Hadi, and for all records containing or referring to statements made by al-Hadi about Zahir. Zahir supports this request by arguing that one of the three principal justifications the respondents give for detaining Zahir is that he allegedly performed administrative work and provided translation services for al-Hadi, who was purportedly a high level al-Qaida operative. The respondents oppose these requests by arguing that the amended factual return places no reliance on any statement made by al-Hadi about Zahir. They further argue that Zahir would receive any statement made by al-Hadi about Zahir that is exculpatory under Section I.D.1 of the CMO, and that some of the information responsive to this request could be classified at a level above the level at which Zahir's counsel could have access to the information because Zahir's counsel does not have a "need to know" the information.

The amended factual return does not claim to rely upon any statements made by al-Hadi, and Zahir's counsel would receive any statement made by al-Hadi that is exculpatory under section I.D.1 of the CMO. However, a significant assertion against Zahir is that he worked for al-Hadi, a claim that Zahir appears to rebut





-9-

by arguing that he did not know that al-Hadi worked for al-Qaida. Therefore, statements made by al-Hadi that could affect the determination of whether Zahir knew that al-Hadi was a member of al-Qaida should be provided to Zahir's counsel. If the respondents identify information that complies with this request, yet the respondents believe that the information should not be provided to Zahir's counsel because he does not need to know it, the respondents may file the information with the court under seal accompanied by a motion to deny disclosure, explaining with specificity why the information is not relevant to Zahir's detention.

In interrogatories 38 and 39 and request for production 7, the petitioner asks the respondents whether an individual named  to whom reference is made in the document was ever detained by the government, and if he was, whether he produced information which the government relies upon for detaining Zahir. Zahir also requests any documents pertaining to that contain information relevant to his detention. The respondents oppose, arguing that the evidence regarding that is cited in the amended factual return all derived from the petitioner himself. While the respondents clearly have an obligation under Section I.D.1 of the CMO to provide Zahir with information taken from or about that is exculpatory for Zahir, Zahir has failed to show how these





-10-

requests are narrowly tailored to produce evidence that would undermine the factual basis for Zahir's detention. Therefore, these requests will be denied.

In interrogatories 46 and 47, Zahir asks whether the Peshawar Cell of al-Qaida ever committed any acts against United States or coalition forces, personnel, or property, and if so, when and where such attacks occurred. In interrogatories 53 to 59 and request for production 5, Zahir asks for any evidence the respondents have, in addition to Zahir's statements cited in the amended factual return, showing that Zahir b(1) and that Zahir was involved in making time-delayed explosive devices. Respondents oppose these requests on two grounds. They argue that Zahir has not shown that these requests would produce evidence that will materially advance Zahir's case in part because the respondents' assertions are primarily based upon Zahir's own statements, and that any shortcoming in the evidence pertaining to the nature of the Peshawar Cell, Zahir's b(1) or Zahir's knowledge that the group he was purportedly associating himself with engaged in violent acts through the use of time-delayed explosive devices, are appropriately addressed as challenges to the sufficiency of the respondents' evidence.





-11-

As was previously mentioned, the respondents allege as part of the factual basis for Zahir's detention that after December 2001, Zahir "became an active member of an anti-coalition cell that planned to use violence against the armed forces of the United States and its allies" in order to force them to leave Afghanistan, and that Zahir supported this cell by "arranging funding from al-Qaida." (See Thomas Decl. at ¶ 1.) The respondents further allege that Zahir ████ ████████ ████ and that Sur Gul, a member of the group Zahir was associating himself with after December 2001, was an "explosives expert" who provided training to Zahir regarding "how to initiate the time-delayed detonation of a bomb." (Id. at ¶¶ 41, 44.) Thus, specific information about the nature and extent of the combatant activities of this anti-coalition cell is centrally relevant to portions of the of the factual basis cited by the respondents for Zahir's detention. Therefore, if the respondents possess any information undermining the assertion that the Peshawar Cell took part in or otherwise planned to engage in hostile activities against the United States or its allies, the respondents will be ordered to produce that evidence to Zahir. Otherwise, these requests will be denied.

In interrogatories 60 to 68 and requests for production 2 and 3, Zahir seeks information about the respondents' evidence,





-12-

or lack of it, regarding his role in the grenade attack in Zormat, Afghanistan, including any statements made by the victims of the attack or their driver. The respondents oppose, arguing that Zahir's requests do not seek evidence that would facilitate his ability to challenge the legality of his detention. The amended factual return cites only to Zahir's own descriptions of the attack, including his exculpatory comments about the attack. Zahir has not shown that seeking information about any other evidence concerning the attack will enable him to rebut the facts the respondents advanced about this attack for which Zahir himself was reportedly the source.

In interrogatories 69 to 72 and request for production of documents 5, Zahir seeks information regarding whether the government has evidence that Zahir would seek out Usama bin Laden and several associates. Because Zahir does not connect these requests to any specific assertion in the amended factual return, they will be denied.

In interrogatory 73, Zahir seeks the circumstances under which b(1), b(6) provided a statement on which the respondents rely in the amended factual return. While the respondents argue that Zahir has not made any showing or assertion that the statements at issue were coerced, the respondents have not made plain how Zahir could have access to such important information before seeking it from respondents,



-13-

given the restricted nature of these habeas proceedings. In order to facilitate for the petitioner a meaningful opportunity to challenge the factual basis of his detention, the circumstances of a petitioner's statement, and the circumstances of an inculpatory statement made against a petitioner that are relied upon by the respondents, must be provided in total to that petitioner. Therefore, this request will be granted.

In interrogatory 84 and request for production 7, Zahir seeks evidence pertaining to chemicals that were found purportedly in Zahir's residence when he was captured. The respondents directly state in their opposition that they will "not rely on Petitioner's possession of these . . . chemicals to justify his detention[.]" (Resp'ts' Opp'n to Pet'r's Mot. for Disc. at 31.) Zahir has not shown how these requests are likely to produce evidence that would undermine the factual basis for detention, and they will be denied.

In request for production 4, Zahir requests production of a ledger that the respondents claim Zahir used to maintain a balance of certain finances for al-Qaida. (See Thomas Decl. at ¶ 37.) The respondents object to this request, arguing that the ledger is irrelevant and would not produce exculpatory information because they do not actually rely on the ledger, but instead rely upon intelligence reports describing the ledger. That distinction is not fatal, as Zahir's examination of the





-14-

ledger itself could demonstrate that reports about its nature are mistaken or misleading, and would undermine the factual basis for Zahir's detention.  This request will be granted.

In request for production 6, Zahir seeks an audio/visual recording of his Combatant Status Review Tribunal ("CSRT") proceeding.  The respondents oppose, arguing that they do not rely upon Zahir's testimony at his CSRT proceeding to justify his detention, and that they provided with the amended factual return a transcript of the CSRT proceeding.  Zahir makes no showing that the recorded version of the transcript he already possesses would undermine the factual basis for his detention.  This request will be denied.

## CONCLUSION AND ORDER

For the reasons mentioned above, it is hereby

ORDERED that petitioner's motion [85] for leave to take discovery be, and hereby is, GRANTED in part and DENIED in part. Zahir's request to propound interrogatories 32 and 73 and requests for production 1 and 4 are GRANTED.  Respondents shall also respond to interrogatories 46, 47, and 53 to 59, and request for production 5 with information they possess undermining the assertion that the Peshawar Cell planned to or did take part in hostilities against allied forces.  Respondents shall answer these requests by October 30, 2009.  Zahir's request to propound his requests otherwise is DENIED.





-15-

SIGNED this 23rd day of September, 2009.

_____/s/_____

RICHARD W. ROBERTS
United States District Judge

